## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

JUNIOR DEWAYNE RANSOM,   )
   )
       **Plaintiff,**   )
   )
        v.   )      **Case No. CIV-13-103-FHS-SPS**
   )
CAROLYN W. COLVIN,   )
Acting Commissioner of the Social   )
Security Administration,[1]   )
   )
       **Defendant.**   )

## REPORT AND RECOMMENDATION

The claimant Junior DeWayne Ransom requests judicial review of a denial of

benefits by the Commissioner of the Social Security Administration pursuant to 42

U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative

Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth

below, the Commissioner's decision should be REVERSED and the case REMANDED

to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J.
Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born March 15, 1972, and was thirty-nine years old at the time of the administrative hearing. (Tr. 20, 127). He completed the twelfth grade, received job training in security in 1992, and has worked as a fast food cook, hospital housekeeper, and sewing machine factory worker. (Tr. 17, 177). The claimant alleges that he has been unable to work since May 15, 2009, due to hearing problems and complications arising from severe burns on his legs and feet received during his childhood. (Tr. 173).

## Procedural History

On June 16, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Peter M. Keltch conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 24, 2012. (Tr. 8-19). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that

the claimant had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.1967(b), *i. e.*, he could lift/carry 20 pounds occasionally and 10 pounds frequently, and sit/stand/walk six hours in an eight-hour workday. The ALJ imposed the additional limitations of only occasionally kneeling, crouching, crawling, and climbing, and always avoiding all hazards due to his hearing loss. (Tr. 12). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform in the national and regional economy, *e. g.*, collator operator, storage rental clerk, and outside deliverer. (Tr. 18).

## Review

The claimant contends that the ALJ erred by: (i) failing to adequately develop the record, and (ii) failing to consider the third-party testimony of his mother. In support of these contentions, the claimant argues, *inter alia*, that the ALJ failed to properly account for his limited range of motion. The undersigned Magistrate Judge finds that the ALJ *did* fail to perform a proper step four analysis, and the decision of the Commissioner should therefore be reversed.

The record reveals that the claimant had the severe impairments of severe burns on his feet and ankles with pain, as well as binaural hearing loss. (Tr. 10). The relevant medical evidence reveals that in May 2008, prior to his alleged disability onset date, he was working at Sonic and standing 8 hours a day, but went to the Central Oklahoma Family Medical Center (COFMC) for treatment of pain in his left knee, left foot, bilateral ankles. The clinician noted that the claimant had decreased plantar/dorsiflexion at the

ankle, and bilateral pes planus. He was advised to obtain corrective shoes and see a podiatrist. (Tr. 218). The claimant returned to COFMC in June and August of 2009, reporting that he continued to have pain in his legs and that he could no longer stand for any period of time without pain and discomfort. He still worked at Sonic, but reported that the pain came with standing only a few hours. (Tr. 219-220). As part of his treatment plan, the claimant was directed to begin elevating his legs throughout the day, and to obtain inserts for his shoes to treat the pes planus. (Tr. 223). At his follow-up appointment in August, the claimant had not obtained inserts, but reported some relief of his symptoms with elevating his legs at home. He reported that he could not elevate his legs at work. (Tr. 225). Musculoskeletal exams revealed full knee extension, reduced knee flexion, reduced ankle extension, and flexion bilaterally. (Tr. 223, 227-228). An audiological exam on November 11, 2009, revealed the claimant had probable sensorineural hearing loss bilaterally that was severe to profound, and he was recommended for binaural amplification and ear protection. (Tr. 230).

A state reviewing physician found that the claimant could perform a limited range of light work in that he could only occasionally, climb, kneel, crouch, or crawl, but could frequently stoop and balance; that he had moderately severe hearing loss, but not of listing level; and that he needed to avoid all hazards due to his hearing loss (Tr. 233-39).

The claimant appeared at the administrative hearing without representation, and testified that his problems were related to his hearing and his legs. He stated that he had problems working his current job at Sonic because he had difficulty hearing the timers going off, and because he could not stand more than two hours without pain in his legs.

(Tr. 28-29). The ALJ questioned him about the length of his shifts, and he stated that his longest shift is approximately five hours. (Tr. 29). In response to questioning about his burns, the claimant testified that they occurred when he was around eighteen months old and the burns had been severe enough to require skin grafting and the removal of his toenails. (Tr. 31). Dr. John Voorhies appeared telephonically at the hearing to testify as to his review of the claimant's medical records. The ALJ recited the RFC of the state reviewing physician, and Dr. Voorhies testified that it was "not unreasonable," but that "[i]t might be better if he looked for a job where he could sit on a stool once in a while." (Tr. 34). Dr. Voorhies testified that the claimant's decreased range of motion had not been clarified, but that it was likely that his scar tissue would get worse over time if the claimant had not had any procedure to release the scar tissue. The claimant stated that he had not. (Tr. 35). As to the claimant's hearing, Dr. Voorhies stated that he believed the claimant's hearing loss would be problematic related to people with high-pitched voices. (Tr. 37). As to his work at Sonic, the claimant testified that he was not working full time and had recently worked a three-hour shift that had left him in quite a bit of pain. (Tr. 39). The ALJ inquired about whether the claimant had qualified for any other assistance, and the claimant said he had been denied. (Tr. 40). The claimant's mother testified at the hearing that the claimant had not been treated by doctors because he did not have any money and did not have a car to drive himself, but that he needed to make money to support his daughter. (Tr. 43-44).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. The ALJ noted that the claimant's allegations of burns,

pain, discomfort, and hearing loss were supported by the record, but that he had failed to save for corrective shoes, purchase compression socks, or try to get hearing aids, nor had his impairments interfered with his ability to work at Sonic. (Tr. 14). The ALJ thus found that the claimant had exaggerated his claims beyond the medical evidence of record. (Tr. 14). The ALJ then found the claimant not credible due to the perceived discrepancies between his testimony and the medical evidence, and afforded great weight to the opinions of the state reviewing physicians. (Tr. 16-17).

In finding that the claimant was not credible, the ALJ relied in large part on his failure to follow treatment for his impairments, *e. g.*, his failure to purchase corrective shoes, compression hose, or hearing aids. In considering the impact of such failure, the ALJ must follow a four-part test: (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and (iv) whether the excuse was justified. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Hecker*, 775 F.2d 1104, 1107 (10th Cir. 1985). *See also Lee v. Barnhart*, 117 Fed. Appx. 674, 681 (10th Cir. 2004) ("This analysis applies to cases in which the claimant fails to pursue medical treatment because he cannot afford it.") [unpublished opinion], *citing Thompson*, 987 F.2d 1482, 1489-90 (10th Cir. 1993) (An inability to pay for recommended treatment may justify the failure to follow the treatment); *Miranda v. Barnhart*, 205 Fed. Appx. 638, 642 (10th Cir. 2005) ("'[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations

that the individual may provide.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7; *Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("'[T]he medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . To a poor person, a medicine that he cannot afford to buy does not exist.'") [unpublished opinion], *quoting Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987). In this case, however, the ALJ failed to discuss *any* of these factors in relation to his finding that claimant was noncompliant with medical treatment.

Because the ALJ failed to properly analyze the claimant's failure to follow a prescribed treatment, the undersigned Magistrate judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma